**THE WAND LAW FIRM, P.C.**
Aubry Wand (SBN 281207)
100 Oceangate, Suite 1200
Long Beach, CA 90802
Telephone: (310) 590-4503
Email: awand@wandlawfirm.com

**TREEHOUSE LAW, LLP**
Ruhandy Glezakos (SBN 307473)
Benjamin Heikali (SBN 307466)
Joshua Nassir (SBN 318344)
10250 Constellation Blvd., Suite 100
Los Angeles, CA 90067
Telephone: (310) 751-5948
Email: rglezakos@treehouselaw.com
bheikali@treehouselaw.com
jnassir@treehouselaw.com

*Attorneys for Plaintiff and the Putative Classes*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SHELBY COOPER, on behalf herself and all others similarly situated,

Plaintiff,

v.

KIMBERLY-CLARK CORPORATION, a corporation; and DOES 1 through 10, inclusive,

Defendants.

CASE NO.: 5:23-cv-1025-JGB (SPx)

**FIRST AMENDED CLASS ACTION COMPLAINT**

1. Violation of California Consumers Legal Remedies Act
2. Violation of California False Advertising Law
3. Violation of California Unfair Competition Law
4. Breach of Express Warranty (Cal. Com. Code § 2313)
5. Intentional Misrepresentation

**DEMAND FOR JURY TRIAL**

Plaintiff Shelby Cooper ("Plaintiff"), by and through her counsel, brings this first amended class action complaint against Defendant Kimberly-Clark Corporation ("Defendant"), on behalf of herself and all others similarly situated, and alleges upon personal knowledge as to her own actions, and upon information and belief as to counsel's investigations and all other matters, as follows:

## **INTRODUCTION**

1. During the applicable statute of limitations period, Defendant has marketed and sold its Scott® ComfortPlus™ Mega Roll Toilet Paper products (the "Mega Rolls" or "Class Products") to consumers throughout the State of California with the representation that consumers are getting significantly more toilet paper than what they are receiving.

2. Specifically, on the front packaging of all the Mega Rolls, Defendant makes a prominent representation that the Mega Rolls are equivalent to a significantly higher number of regular rolls. For example, in the image below, Defendant states that 18 Mega Rolls are equivalent to 72 regular rolls (the "*Equivalency Representation*").



3. Based on the *Equivalency Representation*, it is reasonable for consumers to believe that, in purchasing 18 Mega Rolls, they are receiving the equivalent of 72 Scott® ComfortPlus™ ***regular*** rolls (the "Regular Rolls").

4. However, this is not the case. Unbeknownst to consumers, they are receiving far fewer Regular Rolls than as represented on the front packaging of the Class Products. As explained in detail below, consumers are only receiving about 92% of the toilet paper they reasonably think they are purchasing and receiving (e.g., 66 regular rolls instead of 72 in the case of the 18-count package).

5. Put differently, Defendant is cheating consumers out of approximately 8% of the value of each Class Product. The price premium is a meaningful percentage of the Class Products' value—akin to selling a consumer a 12-pack of soda with only 11 cans—the only difference being that in this case the shortfall is concealable. And when the price premium is applied to every sale, the economic detriment suffered by the Class members as a result of Defendant's systematic and unlawful business practices is immense. Through this action, Plaintiff seeks to hold Defendant accountable for deceiving and cheating consumers in this manner.

6. Accordingly, Plaintiff seeks relief in this action individually, and on behalf of all other similarly situated individuals who purchased the falsely and deceptively labeled Class Products during the statute of limitations period, for violations of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*, California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, breach of express warranty (Cal. Com. Code § 2313), and intentional misrepresentation (i.e., common law fraud).

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because Plaintiff is a citizen of the State of California, Defendant is a citizen of the States of Delaware and Texas, and the amount in controversy exceeds

the sum or value of $75,000, exclusive of interest and costs. This Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action filed under Rule 23 of the Federal Rules of Civil Procedure, there are thousands of proposed Class members, the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs, and Defendant is a citizen of a state different from that of Plaintiff and members of the proposed Classes.

8. This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts with the State of California, and/or otherwise intentionally avails itself of the markets in the State of California through the promotion, marketing, and sale of its toilet paper products in the State of California, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this District under 28 U.S.C. § 1391(a)-(d) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PLAINTIFF

10. In or around November 2022, Plaintiff purchased an 18-count package of the Scott® ComfortPlus™ Toilet Paper Mega Rolls for approximately $16 to $18 from a retailer in Riverside, California. Plaintiff saw and relied on the *Equivalency Representation* in making this purchase.[1] More specifically, Plaintiff reasonably believed, based on the *Equivalency Representation*, that she was receiving the equivalent of 72 Regular Rolls. This belief was an important factor in her decision to purchase the product. Plaintiff did not see the miniscule asterisk on the front packaging next to the word “Regular” or the depiction of four regular rolls. Plaintiff also did not see the fine print on the bottom of the back packaging which states that

[1] Plaintiff has previously purchased Scott® ComfortPlus™ Toilet Paper Regular Rolls.

the *Equivalency Representation* is actually comparing Scott Mega Rolls to Charmin regular rolls. Had Plaintiff known that she was only receiving the equivalent of approximately 66 Regular Rolls (i.e., approximately 92% of what Defendant represented), she would not have purchased the product, or would have paid significantly less for it. Therefore, Plaintiff suffered injury in fact and lost money as a result of Defendant's misleading, false, unfair, and deceptive practices, as described herein.

11. Although Plaintiff currently believes that the Class Products do not provide the number of Regular Rolls as represented, she cannot trust any of Defendant's representations, and she lacks personal knowledge as to the specific conditions under which Defendant manufactures and packages the Class Products. For example, Plaintiff cannot rely on the number of sheets Defendant represents each roll contains, nor is it feasible for her to purchase the Class Products and then the measure the amount of toilet paper contained in the product, to try to verify the accuracy of Defendant's representations. Therefore, even though Plaintiff would like to continue purchasing Defendant's Class Products (because other than the *Equivalency Representation* she is satisfied with the product), Plaintiff will for the time being refrain from doing so. This is a tangible and ongoing harm to Plaintiff.

12. As a result of Defendant's unlawful business practices, and the harm caused to Plaintiff and Class members, Defendant should be required to pay for all damages and/or restitution to them. However, monetary compensation alone is insufficient to remedy the ongoing harm that is being caused to Plaintiff, and Class members, who unaware of Defendant's deceptive conduct, will continue purchasing the Class Products, reasonably but incorrectly believing that they are getting more toilet paper than represented, resulting in a continuing harm to them as well. As such, injunctive relief requiring Defendant to cease its false and deceptive labeling practices with respect to the Class Products is necessary and appropriate.

///

## DEFENDANT

13. Defendant Kimberly-Clark Corporation is a multinational personal care corporation that is headquartered in Texas. It owns some of the most familiar consumer staple brands, including Kleenex facial tissue, Huggies disposable diapers and baby wipes, and Cottonelle and Scott toilet paper, to name a few.

14. Defendant manufactures, labels, advertises, and distributes the Class Products for sale across the country, including in the State of California, through Target, Home Depot, Rite-Aid, and other third-party retailers.

15. The true names and capacities of Does 1 through 10, inclusive, are unknown to Plaintiff at this time, and Plaintiff therefore sues such Doe defendants under fictitious names. Upon information and belief, each Defendant designated as a Doe is in some manner highly responsible for the occurrences alleged herein, and Plaintiff's and Class members' injuries and damages, as alleged herein, were proximately caused by the conduct of such Doe defendants. Plaintiff will seek leave of the Court to amend this Complaint to allege the true names and capacities of such Doe defendants when ascertained.

## FACTUAL ALLEGATIONS

### A. The Class Products

16. The Class Products consist of all varieties of the Scott® ComfortPlus™ Mega Rolls, including the 4, 12, 18, and 36 Mega Roll-count products.

17. The Class Products all have an *Equivalency Representation*, prominently printed on the front of the packaging, regardless of whether the Class Product is a 4, 12, 18, or 36 Mega Roll-count. In addition, each Mega Roll contains 425 sheets of toilet paper per roll, irrespective of whether the Class Product is a 4, 12, 18, or 36 Mega roll-count.

///

///

///

**B. The *Equivalency Representation* is False and Deceptive**

18. The *Equivalency Representation* is prominently displayed on all the Class Products' front packaging, as depicted in the following images for the 12-count and 4-count products.[2]







[2] An image of the 18-count package is depicted above. *See* ¶ 2.

19. The *Equivalency Representation* unequivocally conveys to consumers that they are buying "Mega Rolls" that are equivalent to a specific number of Regular Rolls.

20. Unbeknownst to consumers, the *Equivalency Representation* is false and deceptive, and basic arithmetic bears this out. For example, on the 18-count mega rolls that Plaintiff purchased, Defendant states that 18 Mega Rolls equal 72 Regular Rolls. *See* ¶ 2. Each Mega Roll contains 425 sheets per roll. Thus, the 18-count Mega Rolls contain a total of 7,650 sheets (18 × 425). Dividing this number by the number of sheets in each Regular Roll (116 sheets) makes it readily apparent that consumers are actually receiving the equivalent of about 66 (7,650 ÷ 116) Regular Rolls—not 72. In other words, there is a shortfall of 8.41%.

21. Similarly, on the 12-count Mega Rolls, Defendant states that 12 Mega Rolls equal 48 Regular Rolls. *See* ¶ 17. However, consumers of the 12-count Mega Rolls receive less than 44 Regular Rolls, as opposed to the 48 Regular Rolls that Defendant promised (5,100 ÷ 116 = 43.9).[3] The same representation and proportional shortfall applies to the 4-count Mega Rolls. *See id.*

22. In an attempt to circumvent liability for this deception, Defendant places a small symbol or asterisk at the end of the *Equivalency Representation*. As depicted in the following image, on the Mega Rolls' back packaging, Defendant also places a small symbol or asterisk and states in fine print: "Sheet count compared to 71 sheet count Charmin regular roll."

///

///

///

///

[3] Each sheet of toilet paper for both the Class Products and the Regular Rolls is one-ply and the dimensions are the same.




23. Defendant includes this hidden disclaimer because it knows the *Equivalency Representation* is false and deceptive. Defendant has effectively acknowledged as much by revealing that the only way that the *Equivalency Representation* can be truthful is if it is based on a completely different product—Charmin's regular rolls.

24. However, no reasonable consumer would believe that the *Equivalency Representation* is comparing Scott's Mega Rolls to Charmin's regular rolls. A consumer does not reasonably expect such an apples-to-oranges comparison. Rather, as a matter of commonsense, consumers expect that the value proposition is comparing like-kind products.

25. A simple market comparison of similar products proves this point. Charmin makes a value comparison on its mega roll paper product, but unlike Defendant, Charmin makes an apples-to-apples comparison. As shown below, on Charmin's mega rolls, it states "6 MEGA = 23 REGULAR."

///

///

///




26. On the back packaging, it states, "**based on number of sheets in Charmin Regular Roll." Thus, Charmin, unlike Defendant, makes an equivalency claim that compares ***Charmin's*** mega rolls to ***Charmin's*** regular rolls, which again, is what reasonable consumers expect.




27. Other brands, including brands such as Angel Soft and Signature Select, also make a mega roll comparison, and just like Charmin, they compare their

mega rolls to their own regular rolls (i.e., “like-kind products”), as depicted in the following images.












28. In any event, as a legal matter, Plaintiff and other consumers are not reasonably expected to look beyond the representations on the front panel of the Class Products to confirm or refute those representations.[4]

[4] *See, e.g.*, *Brady v. Bayer Corp.*, 26 Cal.App.5th 1156, 1172 (2018); *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008); *Walters v. Vitamin Shoppe Indus.*, 701 F. App'x 667, 670

29. Nor does including a diminutive symbol or asterisk at the end of the *Equivalency Representation*, which a reasonable consumer is unlikely to see, dispel consumer deception, as it is well established under California law that symbols such as asterisks do not serve as a shield to liability for deceptive front-label representations.[5]

30. In sum, because the Class Products contain approximately 8.41% less toilet paper than represented, the *Equivalency Representation* is false, misleading, and deceptive.

**C. The *Equivalency Representation* is Material and It Harms Consumers**

31. As the entity responsible for the development, manufacturing, packaging, advertising, distribution and sale of the Class Products, Defendant knew that the *Equivalency Representation* is untruthful and deceptive.

32. Defendant also knew or should have known that Plaintiff and other consumers would rely on its the *Equivalency Representation* in purchasing the Class Products, and would therefore reasonably believe that the Class Products contain significantly more toilet paper than they do. Nonetheless, Defendant deceptively advertises the Class Products in order to deceive consumers into paying more for what they are getting.

---

(9th Cir. 2017); *Shalikar v. Asahi Beer U.S.A., Inc.*, No. 17-02713 JAK (JPRx), 2017 WL 9362139, at *9 (C.D. Cal. Oct. 16, 2017); *Jou v. Kimberly-Clark Corp.*, No. C-13-03075 JSC, 2013 WL 6491158, at *9 (N.D. Cal. Dec. 10, 2013); *Bush v. Rust-Oleum Corp.*, No. 20-CV-03268-LB, 2021 WL 24842, at *1 (N.D. Cal. Jan. 4, 2021); *Brown v. Natures Path Foods, Inc.*, No. 21-CV-05132-HSG, 2022 WL 717816, at *7 (N.D. Cal. Mar. 10, 2022); *Hall v. Diamond Foods, Inc.*, No. C-14-2148 MMC, 2014 WL 3779012, at *4 (N.D. Cal. July 31, 2014); *Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897, 903 (N.D. Cal. 2021).

[5] *See, e.g.*, *Locklin v. StriVectin Operating Co., Inc.*, No. 21-cv-07967-VC, 2022 WL 867248, at *1-3 (N.D. Cal. Mar. 23, 2022); *Anthony v. Pharmavite*, No. 18-cv-02636-EMC, 2019 WL 109446, at *4 (N.D. Cal. Jan. 4, 2019); *Madenlian v. Flax USA Inc.*, No. 13-cv-01748-JVS (JPRx), 2014 WL 7723578, at *3 n.3 (C.D. Cal. Mar. 31, 2014); *Sperling v. Stein Mart, Inc.*, No. 15-cv-01411-BRO (KKx) 2016 WL 11265686, at *5 (C.D. Cal. Mar. 15, 2016).

33. Plaintiff and other consumers purchased the Class Products relying on the *Equivalency Representation*. They did not know, nor did they have reason to know, that the Class Products do not provide the number of Regular Rolls as represented on the front packaging of the Class Products.

34. The *Equivalency Representation* is material to consumers because it relates to the amount of toilet paper consumers expect to receive and the amount they are actually receiving. Plaintiff and other consumers have a paid a price premium for the Class Products as a result of the *Equivalency Representation*, which is calculated based on the difference between what Defendant promised and what consumers received. Therefore, Plaintiff and other consumers purchasing the Class Products have suffered injury in fact and lost money as a result of Defendant's false and deceptive practices, as alleged herein.

## CLASS ACTION ALLEGATIONS

35. Plaintiff brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and all other applicable laws and rules, individually, and on behalf of all members of the following Classes:

**California Class**

All persons who purchased any of the Class Products in the State of California within the applicable statute of limitations period.

**California Consumer Subclass**

All persons who purchased any of the Class Products in the State of California, for personal, family, or household purposes, within the applicable statute of limitations period.

36. Excluded from the Classes are the following individuals and/or entities: Defendant and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using

the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

37. Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or add subclasses before the Court determines whether class certification is appropriate.

38. Plaintiff is a member of both classes.

39. Numerosity: The proposed Classes are so numerous that joinder of all members would be impractical. The number of individuals who purchased the Class Products in the State of California during the relevant time period is at least in the thousands. Accordingly, Class members are so numerous that their individual joinder herein is impractical. While the precise number of Class members and their identities are unknown to Plaintiff at this time, these Class members are identifiable and ascertainable.

40. Common Questions Predominate: There are questions of law and fact common to the proposed Classes that will drive the resolution of this action and will predominate over questions affecting only individual Class members. These questions include, but are not limited to, the following:

a. Whether Defendant misrepresented material facts and/or failed to disclose material facts in connection with the packaging, marketing, distribution, and sale of the Class Products;
b. Whether the *Equivalency Representation* constituted false or deceptive advertising;
c. Whether Defendant engaged in unfair, unlawful and/or fraudulent business practices;
d. Whether Defendant's unlawful conduct, as alleged herein, was intentional and knowing;
e. Whether Plaintiff and the Classes are entitled to damages and restitution, and if so, in what amount;

f. Whether Defendant is likely to continue using false, misleading or unlawful conduct such that an injunction is necessary; and

g. Whether Plaintiff and the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

41. Defendant has engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiff on behalf of the proposed Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Classes flow, in each instance, from a common nucleus of operative fact, namely, Defendant's deceptive packaging and advertising of the Class Products. Each instance of harm suffered by Plaintiff and Class members has directly resulted from a single course of unlawful conduct. Each Class member has been exposed to the same deceptive practice, as the packaging of each of the Class Products bears a materially identical *Equivalency Representation*, but the products contain substantially fewer Regular Rolls than claimed by Defendant. Therefore, individual questions, if any, pale in comparison to the numerous common questions presented in this action.

42. Superiority: Because of the relatively small amount of damages at issue for each individual Class member, no Class member could afford to seek legal redress on an individual basis. Furthermore, individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.

43. Typicality: The representative Plaintiff's claims are typical of those of the proposed Classes, as all members of the proposed Classes are similarly affected by Defendant's uniform unlawful conduct as alleged herein.

44. Adequacy: Plaintiff will fairly and adequately protect the interests of the proposed Classes as her interests do not conflict with the interests of the members of the proposed Classes she seeks to represent, and she has retained counsel competent and experienced in similar class action litigation. The interests of the members of the Classes will be fairly and adequately protected by Plaintiff and her counsel.

45. Defendant has also acted, or failed to act, on grounds generally applicable to Plaintiff and the proposed Classes, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

## FIRST CLAIM FOR RELIEF
**Violation of California's Consumers Legal Remedies Act**
**California Civil Code § 1750, *et seq*.**
**(*For the California Consumer Subclass*)**

46. Plaintiff repeats the allegations contained in paragraphs 1-45 above as if fully set forth herein.

47. Plaintiff brings this claim individually and on behalf of the members of the proposed California Consumer Subclass against Defendant pursuant to California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq*.

48. The Class Products are "goods" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of such Class Products by Plaintiff and members of the California Consumer Subclass constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

49. Cal. Civ. Code § 1770(a)(2) prohibits "[m]isrepresenting the source, sponsorship, approval, or certification of goods or services." By marketing the Class Products with their current packaging, Defendant has represented and continues to represent that the Class Products have a certification (i.e., that they are equivalent to a

specific number of Regular Rolls) that they do not have. Therefore, Defendant has violated and continues to violate section 1770(a)(2) of the CLRA.

50. Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have…" By marketing the Class Products with their current packaging, Defendant has represented and continues to represent that the Class Products have characteristics (i.e., that they are equivalent to a specific number of Regular Rolls) that they do not have. Therefore, Defendant has violated and continues to violate section 1770(a)(5) of the CLRA.

51. Cal. Civ. Code § 1770(a)(7) prohibits "[r]espresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By marketing the Class Products with their current packaging, Defendant has represented and continues to represent that the Class Products are of a particular standard (that they are equivalent to a specific number of Regular Rolls) which they do not possess. Therefore, Defendant has violated and continues to violate section 1770(a)(7) of the CLRA.

52. Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By marketing the Class Products as being Mega Rolls that contain a specific number of Regular Rolls, but not intending to sell the Class Products as such, Defendant has violated and continues to violate section 1770(a)(9) of the CLRA.

53. At all relevant times, Defendant has known or reasonably should have known that the Class Products do not contain the equivalent number of Regular Rolls as conveyed through the packaging, and that Plaintiff and other members of the California Consumer Subclass would reasonably and justifiably rely on the *Equivalency Representation* when purchasing the Class Products. Nonetheless, Defendant deceptively advertises the Class Products in order to convince consumers that they are getting more toilet paper than they are paying for and receiving.

54. Plaintiff and members of the California Consumer Subclass have justifiably relied on Defendant's misleading representations when purchasing the Class Products. Moreover, based on the materiality of Defendant's misleading and deceptive conduct, reliance may be presumed or inferred for Plaintiff and members of California Consumer Subclass.

55. Plaintiff and members of the California Consumer Subclass have suffered and continue to suffer injuries caused by Defendant because they would have paid significantly less for the Class Products, or would not have purchased them at all, had they known that the Class Products contain far less toilet paper than represented.

56. In accordance with Cal. Civ. Code § 1780(d), Plaintiff is filing a declaration of venue, attached as Exhibit A to this Complaint.

57. On November 29, 2022, Plaintiff, by and through her counsel, sent a notice and demand letter by certified mail to Defendant, informing Defendant of her intent to pursue claims under the CLRA, and an opportunity to cure, consistent with Cal. Civ. Code § 1782. Defendant received this notice and demand letter on December 5, 2022, but has done nothing to rectify the unlawful conduct described herein.

58. Because Defendant has failed to fully rectify or remedy the damages caused after waiting more than the statutorily required 30 days after Defendant received the foregoing notice and demand letter, Plaintiff is timely filing Complaint for damages as permitted under Cal. Civ. Code § 1782(d).

59. Plaintiff also requests that this Court enjoin Defendant from continuing to violate the CLRA as discussed herein and/or from violating the CLRA in the future. Plaintiff also requests an award of actual and punitive damages, attorneys' fees and costs, and any other relief that the Court deems proper, pursuant to Cal. Civ. Code § 1780(a).

**SECOND CLAIM FOR RELIEF**
**Violation of California's False Advertising Law**
**California Business & Professions Code § 17500, *et seq***
**(*For the Classes*)**

60. Plaintiff repeats the allegations contained in paragraphs 1-45 above as if fully set forth herein.

61. Plaintiff brings this claim individually and on behalf of the members of the proposed California Class and California Consumer Subclass against Defendant pursuant to California's False Adverting Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*

62. The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

63. Defendant has represented and continues to represent to the public, including Plaintiff and members of the proposed California Class and California Consumer Subclass, through the *Equivalency Representation*, that the Class Products contain more toilet paper than they actually do. Because Defendant has disseminated misleading information regarding the Class Products, and Defendant knows, knew, or should have known through the exercise of reasonable care that the representations were and continue to be misleading, Defendant has violated the FAL.

64. As a result of Defendant's false advertising, Plaintiff requests that the Court enjoin Defendant from violating the FAL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the proposed California Class and California Consumer Subclass may be irreparably harmed

and/or denied an effective and complete remedy.

**<u>THIRD CLAIM FOR RELIEF</u>**
**Violation of California's Unfair Competition Law ("UCL")**
**California Business & Professions Code § 17200, *et seq.***
**(*For the Classes*)**

65. Plaintiff repeats the allegations contained in paragraphs 1-45 above as if fully set forth herein.

66. Plaintiff brings this claim individually and on behalf of the members of the proposed California Class and California Consumer Subclass against Defendant.

67. The UCL, Cal. Bus. & Prof Code § 17200, provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

68. Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law. Defendant's false and misleading advertising of the Class Products was and continues to be "unlawful" because it violates the CLRA, the FAL, and other applicable laws, as described herein. As a result of Defendant's unlawful business acts and practices, Defendant has unlawfully obtained money from Plaintiff and members of the proposed California Class and California Consumer Subclass.

69. Under the UCL, a business act or practice is "unfair" if the Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims. Defendant's conduct was and continues to be of no benefit to purchasers of the Class Products, as it is misleading, unfair, unlawful, and is injurious to consumers who rely on the packaging. Deceiving consumers into believing the Class Products contain more toilet paper than they do is of no benefit to consumers. Therefore, Defendant's conduct was and continues to be "unfair." As a result of Defendant's unfair business acts and practices, Defendant has and continues to

unfairly obtain money from Plaintiff and members of the proposed California Class and California Consumer Subclass.

70. Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public. Defendant's conduct here was and continues to be fraudulent because the *Equivalency Representation* has the effect of deceiving consumers into believing they are getting more toilet paper than they are actually paying for and receiving. Because Defendant misled Plaintiff and members of both Classes, Defendant's conduct was "fraudulent." As a result of Defendant's fraudulent business acts and practices, Defendant has and continues to fraudulently obtain money from Plaintiff and members of the proposed California Class and California Consumer Subclass.

71. Plaintiff requests that Defendant disgorge, and restore to Plaintiff and Class members, the monies unlawfully obtained from them. Plaintiff also requests that the Court enjoin Defendant from violating the UCL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the proposed California Class and California Consumer Subclass may be irreparably harmed and/or denied an effective and complete remedy.

## FOURTH CLAIM FOR RELIEF
**Breach of Express Warranty**
**California Commercial Code § 2313**
**(*For the Classes*)**

72. Plaintiff repeats the allegations contained in paragraphs 1-45 above as if fully set forth herein.

73. Plaintiff brings this claim individually and on behalf of the members of the proposed California Class and California Consumer Subclass against Defendant.

74. California's express warranty statute provides that "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods

which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code § 2313.

75. Defendant has expressly warranted on the Class Products' packaging that they contain the equivalent of a specific number of Regular Rolls through the *Equivalency Representation*.

76. This representation about the Class Products is: (a) an affirmation of fact or promise made by Defendant to consumers that the Class Products contain a specific amount of toilet paper; (b) became part of the basis of the bargain to purchase the Class Products when Plaintiff and other consumers relied on the representation; and (c) created an express warranty that the Class Products would conform to the affirmation of fact or promise. In the alternative, the representation about the Class Products is a description of goods which were made as part of the basis of the bargain to purchase the Class Products, and which created an express warranty that the Class Products would conform to the product description.

77. Plaintiff and members of the California Class and California Consumer Subclass reasonably and justifiably relied on the foregoing express warranty, believing that the Class Products did in fact conform to those warranties.

78. Defendant has breached the express warranties made to Plaintiff and members of the proposed California Class and California Consumer Subclass by failing to the produce the Class Products in accordance with the *Equivalency Representation*, and thus, this express warranty is false.

79. Plaintiff and members of the proposed California Class and California Consumer Subclass paid a premium price for the Class Products but did not obtain the full value of the Class Products as represented. If Plaintiff and members of the proposed California Class and California Consumer Subclass had known of the true nature of the Class Products, they would not have been willing to pay the premium price associated with them. As a result, Plaintiff and members of the California Class and California Consumer Subclass suffered injury and deserve to recover all

damages afforded under the law.

80. Within a reasonable amount of time after Plaintiff discovered that Defendant did in fact breach the express warranty, Plaintiff notified Defendant of the breach. *See supra* ¶ 56.

**FIFTH CLAIM FOR RELIEF**
**Intentional Misrepresentation**
**(*for the Classes*)**

81. Plaintiff repeats the allegations contained in paragraphs 1-45 above as if fully set forth herein.

82. Plaintiff brings this claim individually and on behalf of the members of the California Class and California Consumer Subclass against Defendant.

83. Defendant marketed the Class Products in a manner indicating to consumers that they are getting more toilet paper than they actually receive. Therefore, Defendant has made misrepresentations about the Class Products.

84. Defendant's misrepresentations regarding the Class Products are material to a reasonable consumer because they relate to the quantity of the Class Products. A reasonable consumer attaches importance to such a representation and is induced to act thereon in making purchasing decisions.

85. At all relevant times, Defendant knew that the *Equivalency Representation* was misleading. Defendant intends for Plaintiff and other consumers to rely on this representation, as evidenced by the fact that it intentionally and conspicuously uses the term "MEGA" in comparison to the general term "REGULAR ROLL" while concealing the truth in fine print on the back packaging that no consumer will reasonably see or understand. In the alternative, Defendant acted recklessly in making the representation without regard to the truth.

86. Plaintiff and members of the proposed Classes have reasonably and justifiably relied on Defendant's intentional misrepresentations when purchasing the Class Products, and had the correct facts been known, would not have purchased them at the prices at which they were offered.

87. Therefore, as a direct and proximate result of Defendant's intentional misrepresentations, Plaintiff and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Class Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the proposed Classes, respectfully prays for the following relief:

A. Certification of this case as a class action on behalf of the Classes defined above, appointment of Plaintiff as Class representative, and appointment of her counsel as Class counsel;

B. A declaration that Defendant's actions, as described herein, violate the claims described herein;

C. An award of injunctive relief as is necessary to protect the interests of Plaintiff and the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the unlawful act described above;

D. An award of all economic, monetary, actual, consequential, restitutionary, and compensatory damages caused by Defendant's conduct;

E. An award of nominal damages;

F. An award of punitive damages;

G. An award to Plaintiff and her counsel of reasonable expenses and attorneys' fees;

H. An award to Plaintiff and the proposed Classes of pre and post-judgment interest, to the extent allowable; and

I. For such further relief that the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of herself and the proposed Classes, hereby demands a jury trial with respect to all issues triable of right by jury.

DATED: July 31, 2023

Respectfully submitted,

**THE WAND LAW FIRM, P.C.**

By: /s/ Aubry Wand
Aubry Wand

**TREEHOUSE LAW, LLP**

By: /s/ Ruhandy Glezakos
Ruhandy Glezakos
Benjamin Heikali
Joshua Nassir

*Attorneys for Plaintiff and the Putative Classes*