JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 23-1025 JGB (SPx)** | Date | November 2, 2023 |
| Title | ***Shelby Cooper v. Kimberly-Clark Corp., et al.*** | | |

| | |
|---|---|
| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |

| | |
|---|---|
| MAYNOR GALVEZ | Not Reported |
| Deputy Clerk | Court Reporter |

| | |
|---|---|
| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
| None Present | None Present |

**Proceedings: Order (1) GRANTING Defendant's Motion to Dismiss (Dkt. No. 16); and (2) VACATING the November 6, 2023 Hearing (IN CHAMBERS)**

Before the Court is Defendant Kimberly-Clark Corp.'s motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ("Motion," Dkt. No. 16.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court **GRANTS** the Motion. The Court **VACATES** the November 6, 2023 hearing.

## I. BACKGROUND

On May 2, 2023, plaintiff Shelby Cooper ("Plaintiff" or "Cooper") filed a class action complaint against defendant Kimberly-Clark Corp. ("Defendant"). ("Complaint," Dkt. No. 1-2.) On June 2, 2023, the matter was removed to this Court pursuant to 28 U.S.C. § 1332(d) and 28 U.S.C. § 1332(a). (Dkt. No. 1.) On July 31, 2023, Plaintiff filed a first amended class action complaint against Defendant. ("FAC," Dkt. No. 14.) The FAC asserts five causes of action: (1) violation of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq.; (2) violation of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq.; (3) violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.; (4) breach of warranty; and (5) intentional misrepresentation. (See id.)

On August 14, 2023, Defendant moved to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (See Motion.) On September 18, 2023, Plaintiff opposed the Motion. ("Opposition," Dkt. No. 19.) On October 2, 2023, Defendant replied. ("Reply," Dkt. No. 20.)

## II. FACTUAL ALLEGATIONS

Plaintiff alleges the following facts, which are assumed to be true for the purposes of this Motion. See Swift v. California, 384 F.3d 1184, 1188 (9th Cir. 2004).

Defendant markets and sells its Scott® ComfortPlus™ Mega Roll Toilet Paper products ("Mega Rolls" or "Products") to consumers throughout the State of California. (FAC ¶ 1.) Plaintiff challenges all varieties of Defendant's Mega Rolls, including the 4, 12, 18, and 36 Mega Rolls products. (Id. ¶ 16.) On the front of the packaging of the Products, Defendant makes a representation that the Mega Rolls are equivalent to a higher number of regular rolls, for example, Defendant states that 18 Mega Rolls equals 72 regular rolls. ("Challenged Representation," Id. ¶ 2.) Below is an example of Defendant's packaging as presented in the FAC. (Id.)




[1] All subsequent references to "Rule" refer to the Federal Rules of Civil Procedure, unless otherwise noted.

Plaintiff alleges that the Challenged Representation misleads reasonable consumers, including Plaintiff, to believe that each Mega Roll is composed of four Scott® ComfortPlus™ regular rolls ("Scott Regular Rolls"). (Id. ¶¶ 3, 18-19.) Rather, each Mega Roll is composed of four Charmin regular rolls ("Charmin Regular Rolls"). (Id. ¶ 10.) Plaintiff alleges that she has suffered injury in fact and lost money as a result of Defendant's misleading, false, unfair, and deceptive practices. (Id. ¶ 10.)

Each Mega Roll contains 425 sheets of toilet paper per roll.[2] (Id. ¶ 17.) Each Scott Regular Roll contains 116 sheets of toilet paper per roll. (Id. ¶ 20.) The Mega Rolls sheet count is compared to the 71 sheet count Charmin Regular Roll—Plaintiff does not dispute the equivalency of this comparison. (Id. ¶¶ 22-23.)

In the Challenged Representation, Defendant includes two double asterisks, one at the end of the word "regular," and a second next to the depiction of four regular rolls. (Id. ¶ 22.) On the back of the Mega Rolls packaging, Defendant includes a double asterisk next to the disclaimer: "Sheet count compared to 71 sheet count Charmin regular roll." (Id.) Below is an example of Defendant's packaging as presented in the FAC. (Id.)




[2] Each sheet of toilet paper for all relevant products including Mega Rolls and regular rolls is one-ply and the dimensions are the same. (FAC ¶ 21 n.3.)

In or around November 2022, Plaintiff purchased an 18-count package of the Mega Rolls for approximately $16 to $18 from a retailer in Riverside, California. (Id. ¶ 10.) Plaintiff reasonably believed that she was receiving the equivalent of 72 Scott Regular Rolls. (Id.) Plaintiff did not see the "miniscule asterisk on the front packaging" next to the word "Regular" or the depiction of four regular rolls. (Id.) Plaintiff did not see the fine print on the bottom of the back packaging which states that the Challenged Representation compares the Mega Rolls to Charmin Regular Rolls. (Id.) Had Plaintiff known that she was only receiving the equivalent of approximately 66 Scott Regular Rolls, she would not have purchased the product, or would have paid significantly less for it. (Id.) Even though Plaintiff would like to continue purchasing Defendant's Mega Rolls (because other than the Challenged Representations she is satisfied with the product), Plaintiff will for the time being refrain from doing so. (Id. ¶ 11.) Plaintiff continues to be unable to rely on the truth of the Challenged Representations on the Mega Rolls labels and packaging. (Id.)

## III. LEGAL STANDARD

### A. Rule 12(b)(6)

Under Rule 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Ileto v. Glock Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994). Courts are not required, however, "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.2d 1049, 1055 (9th Cir. 2008) (internal citation and quotation omitted). Courts also need not accept as true allegations that contradict facts which may be judicially noticed. See Mullis v. U.S. Bankr. Court, 828 F.2d 1385, 1388 (9th Cir. 1987).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570; Ashcroft v. Iqbal, 556 U.S. 662 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely

consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

### B. Rule 15

Rule 15 provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit has held that "'[t]his policy is to be applied with extreme liberality.'" Eminence Cap., L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)). Generally, a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citation omitted).

## IV. DISCUSSION

Plaintiff brings claims under three California consumer protection statutes—the UCL, FAL, and CLRA—that cover "interrelated harms." See Fisher v. Monster Beverage Corp., 656 F. App'x 819, 822 (9th Cir. 2016). To state a claim under the UCL, FAL, or CLRA, a plaintiff must allege that the defendant's purported misrepresentations are likely to deceive a reasonable consumer. See Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008). The reasonable consumer standard requires "more than a mere possibility that [Defendant's] label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" Ebner v. Fresh, Inc., 838 F.3d 958, 965 (9th Cir. 2016) (quoting Lavie v. Procter & Gamble Co., 129 Cal. Rptr. 2d 486, 495 (Ct. App. 2003)). Rather, a plaintiff must plausibly allege a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." Id. (quoting Lavie, 129 Cal. Rptr. At 495). California laws "prohibit not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." Williams, 552 F.3d at 938 (alteration in original) (internal quotation marks omitted).

At the motion to dismiss stage, a court can dismiss a complaint for failure to state a claim only where it can conclude as a matter of law that members of the public are not likely to be deceived by the advertisement. Moore v. Mars Petcare US, Inc., 966 F.3d 1007, 1017 (9th Cir. 2020). Whether an advertisement is deceptive will often be a question of fact not appropriate for decision on a motion to dismiss. See id.; Williams, 552 F.3d at 938. Nevertheless, the "primary evidence in a false advertising case is the advertising itself," Brockey v. Moore, 131 Cal. Rptr. 2d 746, 756 (Ct. App. 2003), and a court may resolve such claims based on its review of the product packaging, Pelayo v. Nestle USA, Inc., 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013). "[W]here

plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." Moore v. Trader Joe's Co., 4 F.4th 874, 882–83 (9th Cir. 2021) (citation omitted). A "'rational consumer' would not 'simply assume' something about a product that they can 'plainly see.'" Sinatro v. Mrs. Gooch's Natural Food Markets, Inc., 2023 WL 2324291, at *10 (quoting Ebner, 838 F.3d at 966). As such, it is appropriate to dismiss an action at the pleading stage when "it [is] not necessary to evaluate additional evidence regarding whether the advertising [is] deceptive, since the advertisement itself [makes] it impossible for the plaintiff to prove that a reasonable consumer [is] likely to be deceived." Williams, 552 F.3d at 939; see also Ebner, 838 F.3d at 966–68; Davis v. HSBC Bank Nev., N.A., 691 F.3d 1152, 1162 (9th Cir. 2012) (upholding dismissal where plaintiff's theory "defies common sense" and the advertising "was not likely to deceive a reasonable consumer").

Here, Plaintiff alleges that a reasonable consumer would interpret "regular" rolls to mean ***only*** Scott Regular Rolls and no other brand of regular rolls. (Opposition at 1.) Defendant retorts that "[r]easonable consumers understand that when they see an asterisk on a brand's product, they should look for a corresponding disclosure." (Motion at 1.) "They also know that product comparisons to competitor products is common." (Id.; see also id. at 6 (citing Shaeffer v. Califia Farms, LLC, 44 Cal. App. 5th 1125, 1138 (2020) (references to competing products alone are not actionable))). Accordingly, Defendant argues, when reasonable consumers purchase Mega Rolls, they understand that the packaging is telling them that one Mega Roll has four times as many sheets as the competition's regular roll. (Id.) The Challenged Representation contains the same two double asterisks—along with the corresponding back panel disclaimer "**Sheet count compared to 71 sheet count Charmin regular roll"—on all products raised by Plaintiff, below is an example.







Motion at 1.

Defendant argues that no reasonable consumer would be deceived by the "accurate and truthful" Mega Rolls labels and that Plaintiff cannot demonstrate "more than a mere possibility that the [Mega Rolls] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." (Motion at 5 (citing Trader Joe's, 4 F.4th, at 881-82; In re 5-Hour Energy Mktg. & Sales Pracs. Litig., 2018 WL 11354864, at *4-5, 8 (C.D. Cal. Jan. 24, 2018)).) The Court agrees. See Whiteside v. Kimberly-Clark Corp., 2023 WL 4328175, at *4 n.2 (C.D. Cal. June 1, 2023) (Bernal, J.) (finding that a reasonable consumer would not be misled where an asterisked product was qualified by a disclosure, even if the disclosure was "small," because it was "clear and readable"). The Court reviews the packaging as a whole and finds that a reasonable consumer would not "simply assume" the Products contain the equivalent of four Scott Regular Rolls per Mega Roll when she can "plainly see" that the Mega Rolls count is compared to a "71 sheet count ***Charmin*** Regular Roll." See Sinatro, 2023 WL 2324291, at *10 (quoting Ebner, 838 F.3d at 966); see also. "Plaintiff cannot simply look to the statement on the front panel, ignore the asterisk, and claim [she] has been misled." Moreno v. Vi-Jon, Inc., 2021 WL 807683, at *6 (S.D. Cal. Mar. 3, 2021); see also Dinan v. SanDisk LLC, 2020 WL 364277, at *8 (N.D. Cal. Jan. 22, 2020).[3] Given that Defendant's use of the term "Mega Rolls" on their Products is qualified by the reasonably prominent asterisks and corresponding disclaimer, a reasonable consumer is not likely to be misled into believing that the Mega Rolls are equivalent to Scott Regular Rolls. See, e.g., Moreno, 2021 WL 807683, at *6 (dismissing case where the products' "primary display panel contains an asterisk . . . direct[ing] the consumer to the back panel"); Dinan, 2020 WL 364277, at *9 (dismissing case where "the disclosure serves not to 'cure' but rather to 'clarify' Defendant's use of [a] term"); Sponchiado v. Apple, Inc., 2019 WL 6117482, at *4–5 (N.D. Cal. Nov. 18, 2019) (dismissing case where "the qualifying language expressly notif[ies] the consumer that the actual screen area is less than indicated"); In re 5-Hour Energy, 2018 WL 11354864, at *5 (dismissing case where on-label disclosures render plaintiffs' interpretation unreasonable). Thus, the Court concludes that reasonable consumers are not likely to be deceived by the packaging on Defendant's Products.

Plaintiff relies on Williams to argue that the Court should disregard this back-label representation. (See Opposition at 7 (citing Williams, 552 F.3d at 939).) In Williams, parents of

---

[3] Plaintiff contends that a reasonable consumer would not notice the asterisks or disclaimer in fine print. (Opposition at 4-8.) Yet "[a]sterisks are common in both commerce and elsewhere to denote that the 'reader' should be aware that there is more than meets the eye." Dinan, 2020 WL 364277, at *8. "Because the asterisk calls the consumer's attention to the fact that there is supplemental information on the package that the consumer should read, it matters less that the disclosure is allegedly not conspicuous on the package." Id. (internal quotation marks and citation omitted). "Once the consumer is directed to look for the disclosure because of the asterisk, [she] knows to look for it and can find it in the fine print." Id. Here, the "Sheet count compared to 71 sheet count Charmin regular roll" disclosure is small, but clear and readable. A rational consumer who cares about what "Mega" means as it relates to "Regular" rolls would immediately notice the asterisks—which are clearly affixed to the word "Regular"—and read the corresponding disclaimer which clarifies that Mega Rolls are compared to Charmin Regular Rolls.

toddlers alleged that Gerber's "Fruit Juice Snacks," a food product developed for toddlers, were packaged deceptively. Williams, 552 F.3d at 939. The front of the product included an image of various fruits, while the back disclosed that the only "fruit juice" in the snacks was "white grape juice from concentrate" and the two primary ingredients were sugar and corn syrup. See id. The Ninth Circuit found that a reasonable consumer could be misled into believing that the product contained some amount of the fruits pictured on the front label, which it does not. Id. at 939–40. As often cited, the Williams court held that "reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." Id. at 939. Manufacturers may not mislead consumers on the front and then use the ingredient list on the back as "a shield for liability for the deception." Id.; see also Brady v. Bayer Corp., 237 Cal. Rptr. 3d 683, 692–93 (Ct. App. 2018) (approving Williams and stating that "a black label ingredients list that conflicted with, rather than confirming, a front label claim could not defeat an action").

Yet as this Court and others have recognized, the Ninth Circuit has since refined its analysis. "Williams stands for the proposition that ***if*** the defendant commits an act of deception, the presence of fine print revealing the truth is insufficient to dispel that deception." Ebner, 838 F.3d at 966 (alteration in original); see also Dinan, 2020 WL 364277, at *9 ("Williams and its progeny speak only to situations in which the defendant has actually committed an act of deception on the front of the package."). By contrast, in Ebner, the Ninth Circuit held that because defendant's product label disclosed the correct weight of the included lip product, the plaintiff's claim that a reasonable consumer would be deceived as to the amount of product was not plausible. Ebner, 838 F.3d at 965. The Ebner court found salient the fact that "the weight label does not contradict other representations or inferences on [defendant's] packaging." Id. at 966. Thus, "unlike in Williams, there is no deceptive act to be dispelled." Id. Here too, there is no deceptive act to be dispelled because Defendant's packaging is accurate. Plaintiff does not dispute that the Products, with or without the asterisks, ***in fact*** contain four Charmin Regular Rolls per Mega Roll. (See Motion at 5; FAC ¶¶ 22-23.)

In conclusion, the Court holds that no reasonable consumer would interpret Defendant's packaging to mean that the Mega Rolls are compared to Scott Regular Rolls. Accordingly, the Court **GRANTS** the Motion and **DISMISSES** the Complaint. Because the Complaint is subject to dismissal in its entirety on the above grounds, the Court need not reach Defendant's additional arguments regarding Plaintiff's failure to state a claim for breach of warranty, intentional misrepresentation, or restitution. (See Motion at 11-13); see also Workman v. Plum Inc., 141 F. Supp. 3d 1032, 1037 (N.D. Cal. 2015) (holding that plaintiff failed to state a claim under the reasonable consumer test and declining to reach additional arguments for dismissal).

Moreover, because the Court finds that Plaintiff's interpretation is unreasonable as a matter of law based on its review of the Products' packaging as a whole, amendment of the Complaint is futile. See Moore, 4 F. 4th at 886 (upholding dismissal of complaint in its entirety without leave to amend because "Plaintiffs have not alleged, and cannot allege, facts to state a plausible claim that Trader Joe's Manuka Honey is false, deceptive, or misleading"); Davis, 693 F.3d at 1171 (upholding dismissal of complaint in its entirety, including FAL and UCL claims,

with prejudice); Ebner, 838 F.3d at 966-68 (upholding dismissal of UCL, CLRA and FAL claims with prejudice); Steinberg, 2022 WL 220641, at *8 (N.D. Cal. Jan. 25, 2022) ("Because the Court concludes that further amendment would be futile, given the implausibility of her deceptive labeling claims, Steinberg is not given leave to amend."); Macaspac v. Henkel Corp., 2018 WL 2539595, at *6 (S.D. Cal. June 4, 2018) ("No amount of additionally pleaded facts could change the features of the Purex bottles that render them non-deceptive. The Court accordingly denies leave to amend and dismisses the complaint with prejudice."); Workman, 141 F. Supp. 3d at 1037 ("[A]s this order finds that the labels at issue are not deceptive, and the labels themselves cannot be changed by a new complaint, any amendment would be futile."). The Court **DISMISSES** the Complaint in its entirety **WITHOUT LEAVE TO AMEND**.

## V. CONCLUSION

For the reasons above, the Court **GRANTS** the Motion and **DISMISSES** the Complaint **WITHOUT LEAVE TO AMEND**. The Court **VACATES** the November 6, 2023 hearing. The Clerk is directed to close the case.

**IT IS SO ORDERED.**